UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | MASTER FILE NO. 12-md-02311 HONORABLE SEAN F. COX |

_____

| | |
|---|---|
| In re: AUTOMOTIVE WIRE HARNESSES | Case No. 12-cv-00102 |
| In re: INSTRUMENT PANEL CLUSTERS | Case No. 12-cv-00202 |
| In re: FUEL SENDERS | Case No. 12-cv-00302 |
| In re: HEATER CONTROL PANELS | Case No. 12-cv-00402 |
| In re: BEARINGS | Case No. 12-cv-00502 |
| In re: OCCUPANT SAFETY SYSTEMS | Case No. 12-cv-00602 |
| In re: ALTERNATORS | Case No. 12-cv-00702 |
| In re: ANTI-VIBRATION RUBBER PARTS | Case No. 12-cv-00802 |
| In re: WINDSHIELD WIPERS | Case No. 12-cv-00902 |
| In re: RADIATORS | Case No. 12-cv-01002 |
| In re: STARTERS | Case No. 12-cv-01102 |
| In re: AUTOMOTIVE LAMPS | Case No. 12-cv-01202 |
| In re: SWITCHES | Case No. 12-cv-01302 |
| In re: IGNITION COILS | Case No. 12-cv-01402 |
| In re: MOTOR GENERATORS | Case No. 12-cv-01502 |
| In re: STEERING ANGLE SENSORS | Case No. 12-cv-01602 |
| In re: HID BALLASTS | Case No. 12-cv-01702 |
| In re: INVERTERS | Case No. 12-cv-01802 |
| In re: ELECTRONIC POWERED STEERING ASSEMBLIES | Case No. 12-cv-01902 |
| In re: AIR FLOW METERS | Case No. 12-cv-02002 |
| In re: FAN MOTORS | Case No. 12-cv-02102 |
| In re: FUEL INJECTION SYSTEMS | Case No. 12-cv-02202 |
| In re: POWER WINDOW MOTORS | Case No. 12-cv-02302 |
| In re: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 12-cv-02402 |
| In re: VALVE TIMING CONTROL DEVICES | Case No. 12-cv-02502 |
| In re: ELECTRONIC THROTTLE BODIES | Case No. 12-cv-02602 |
| In re: AIR CONDITIONING SYSTEMS | Case No. 12-cv-02702 |
| In re: WINDSHIELD WASHERS | Case No. 12-cv-02802 |
| In re: CONSTANT VELOCITY JOINT BOOTS | Case No. 12-cv-02902 |
| In re: SPARK PLUGS | Case No. 12-cv-03002 |
| In re: AUTOMOTIVE HOSES | Case No. 12-cv-03202 |
| In re: SHOCK ABSORBERS | Case No. 12-cv-03302 |
| In re: BODY SEALING PRODUCTS | Case No. 12-cv-03402 |

| | |
|---|---|
| In re: INTERIOR TRIM PRODUCTS | Case No. 12-cv-03502 |
| In re: BRAKE HOSES | Case No. 12-cv-03602 |
| In re: EXHAUST SYSTEMS | Case No. 12-cv-03702 |
| In re: CERAMIC SUBSTRATES | Case No. 12-cv-03802 |
| In re: POWER WINDOW SWITCHES | Case No. 12-cv-03902 |
| In re: AUTOMOTIVE STEEL TUBES | Case No. 12-cv-04002 |
| In re: ACCESS MECHANISMS | Case No. 12-cv-04102 |
| In re: MINIMODULES | Case No. 12-cv-04302 |
| In re: SIDE DOOR LATCHES | Case No. 17-cv-13005 |

THIS DOCUMENT RELATES TO:
 Automobile Dealership Actions

**OPINION AND ORDER DENYING CERTAIN AUTOMOBILE DEALERSHIP SETTLEMENT CLASS MEMBERS' MOTION TO ENFORCE PLANS OF ALLOCATION WITH REGARD TO RESERVE FUND ELIGIBILITY**

Before the Court is Automobile Dealership Settlement Class Members' ("Members") Motion to Enforce Plans of Allocation with Regard to Reserve Fund Eligibility (See ECF No. 590 in 12-102).  The Members include 35 Dealerships under the Wolfe Automotive Group, Kings Nissan & Kings Infiniti, and Young Automotive Group LLC umbrella.  Members seek to share in the pro rata payment from the reserve funds set forth in the Plans of Allocation, including those Settlements in which they were not Claimants.  The Court heard argument on September 22, 2020, and at the conclusion of the hearing, took this matter under advisement.  For the reasons that follow the Court **DENIES** the motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Members purchased hundreds of thousands of new vehicles containing the components parts at issue in this litigation.  (See e.g. ECF No. 590 in 12-102, Attachment 1, Decl. of Emma K. Burton at ¶ 2).  Although Members did not submit claims in the Rounds 1 and 2 Settlements, they submitted valid Proofs of Claim prior to the January 21,

2019, Round 3 Settlements filing deadline. (Burton Decl. ¶¶ 3-5). The Claims Administrator processed and approved Members' claims in Round 3.

According to the Declaration of Scott DiCarlo, the Senior Project Manager with the Claims Administrator, (ECF No. 593 in 12-102), ,Round 1 Settlements resulted in approximately $58 million from 23 separate settlement classes arising from settlements with 10 defendants. (ECF No. 397 in 12-102). For example, Defendant Hitachi Automotive Systems, Ltd.'s settlement involved nine parts and, therefore, nine different settlement classes. (See e.g. Notice of Motion and Memorandum of Law in Support for Preliminary Approval of Proposed Settlement with Hitachi Automotive Systems, Ltd. and Provisional Certification of Settlement Classes, 2:12-cv-00702, ECF Doc. No. 35, Attach. 1 - Settlement Agreement (E.D. Mich. Apr. 3, 2015). Moreover, the class periods identified for each of the Hitachi Round One settlement classes differ from settlement classes in other settlements because each settlement is based on factors relating to the defendant, parts, and conduct at issue. Id. Pursuant to the court-approved notice, dealerships had until March 31, 2016, to file a valid proofs of claim.

The notices authorized by the Court for the Round One settlements alerted automobile dealerships that they would only share in those settlements if they filed a valid Proof of Claim by March 31, 2016:

> To remain in the Settlement Classes, you do not need to take any further action at this time. However, to share in the Settlement Funds, your dealership will be required to submit a Proof of Claim form that will be available on the Settlement Website at www.AutoDealerSettlement.com, and to submit it by March 31, 2016 (for more information see Question 8, below). If you choose this option, your dealership will share in the net proceeds of the proposed Settlements if its Proof of Claim is timely, valid, and your dealership is entitled to a distribution under the Plans of Allocation (described below in response to Question No. 9) and if and to the extent that the proposed Settlements are approved by the Court. Your dealership will be bound by the judgment and release to be entered by the Court as

>described below (the "Judgment").  To be valid, your dealership's request must contain the information required by the Proof of Claim form and be postmarked, or submitted electronically, by March 31, 2016.

(See e.g. 2:12-cv-00102, ECF Doc. No. 394, p. 4).  The notice clearly informs the recipients that sharing in the settlement proceeds requires a timely Proof of Claim.

Round 2 Settlements involved 40 separate classes, 10 defendants, and $125,000,000.  To participate in the Round Two Settlements, dealerships were required to file a Proof of Claim by April 28, 2017.  The notice that follows instructed dealerships how to proceed using the same language used in Round 1, and set a submission date of April 28, 2017.  It likewise informed class members, "In order to receive payment, you need to file a valid claim." (See ECF No. 503 at 3 in 12-102, Order Authorizing Dissemination of Class Notice and Scheduling Hearing for Final Approval of Settlements; ECF No. 499 at 29, Motion for Final Approval of Settlements (Second Group).

In sum, each settlement with a Defendant resulted in one or more settlement classes because each part sold by a Settling Defendant created a separate settlement class.  (See e.g. Doc. No. 397 p. 15 in 12-102).  Also the class periods identified in the settlement classes were not uniform.  Because of the large number of settlements as well as the number of Defendants in this litigation, Class Counsel opted to defer notice and the corresponding claims process until Class Counsel determined that an appropriate number of settlements occurred.  Only after multiple settlements were reached did Class Counsel request leave to provide notice.

This procedure, which was approved by the Court, kept expenses lower.  Moreover, under the settlement plans approved by the Court, after class members submitted claims they were permitted to "rely on that Proof of Claim and do nothing

further to participate" in future settlements with Defendants.  Consequently, claims submitted in earlier rounds were automatically processed in subsequent rounds.

To date, settlements have been aggregated four times with four corresponding notice periods.  With each round of settlements, Class Counsel requested that reserve funds be set aside "for future allocation and distribution to eligible Settlement Class members."  (See ECF No. 519-1 in 12-101 at 78).  The reserve funds were created to account for "information not currently available about affected, parts, models, and brands," and any funds not needed for the stated purpose would be "distributed on a pro rata basis to members of the Settlement Classes in their respective cases."  (ECF No. 443 in 12-102).

After Class Counsel requested permission to distribute the reserve funds from the first three rounds of settlements, Members contacted Class Counsel and the Claims Administrator regarding the distribution.  (ECF No. 590 in 12-102, Decl. of Emma K. Barton, ¶¶ 8,9).  A follow-up phone call between Members and the Claims Administrator confirmed that it was not clear whether Members were eligible to receive reserve funds from all the settlements, and the Claims Administrator offered to raise the reserve fund eligibility with Class Counsel.  (Id. Barton Decl. ¶ 9).  On July 10, 2020, Class Counsel notified Members that they were not eligible for reserve funds from Rounds 1 and 2 Settlements.  Although subsequent discussions took place, the Members and Class Counsel did not reach an agreement as to Members' eligibility.

In sum, the parties disagree as to whether Members, as members of the settlement classes in Rounds I and 2 Settlements that did not file claims and did not receive any portion of the initial distribution, are entitled to receive a pro rata share of the Reserve Funds.

## II. ANALYSIS

### A. Members Are Not Entitled to a Share of the Cumulative Reserve Funds for Which They Were Not Claimants Under the Allocation Plan

The parties disagree as to whether Members are entitled to distributions from the Round 1 and Round 2 Settlement reserve funds, which have not yet been made. Members contend that a plain reading of the Plans of Allocation shows that all class members who submitted valid claims are entitled to their pro rata share of the cumulative funds held in reserve. Because Members were identified as settlement class members[1] and filed claims in Round 3 Settlements, they meet the definition. In contrast, Class Counsel seeks to restrict reserve fund distribution to a particular round's claimants.

The resolution of this dispute does not turn on whether Members were potential class members in the first two Settlement Rounds. The court-approved notices advised dealerships that they could only receive money from Round 1 and Round 2 Settlements if they filed valid claims by the deadlines. Moreover, the Allocation Plans clearly state: "In order to receive a payment, you need to file a valid claim." Members likely had valid claims, but they did not file them in accordance with the notices governing Rounds 1 and 2 Settlements. Moreover, Members did not and have not provided evidence to the Court explaining why they failed to file timely proofs of claim. In short, the Court agrees with Class Counsel that the allocation of the reserve funds turns on whether a class member

---

[1] Members also argue that Class Counsel use of the term–"class members," rather than "claimants" supports their position. The Court disagrees. Class Counsel modified the term class member to include "eligible". Moreover, had Class Counsel used claimant, the description would have to be modified by terms such as eligible or verified or timely. A claimant is anyone who files a claim, including claims that were unverified. The term would not allow anyone who filed a claim to partake in a share of the settlements.

filed claims in those particular settlements, and Class Counsel clearly represented that when the reserve funds were distributed it would be to eligible Dealerships. (ECF No. 519 in 12-101). The reserve funds are not separate from the settlements–but a further distribution of existing settlements, for which Members failed to file claims. The aggregation of settlements into rounds created by Class Counsel does not alter the essential facts.

### B. Principles of Equity and Fairness Do Not Require Allocation of Reserve Funds to Members

The parties disagree as to whether Members' claims to the reserve funds can be characterized as late, and if they are, whether equitable distribution and the fiduciary duty owed by Class Counsel to all class members regardless of timing issues requires allocation of those reserve funds to Members. The Court discusses the arguments below.

#### 1. Timeliness of Claims

Members argue that their request for reserve funds is timely because (1) they submitted timely claims in Rounds 3 and 4 Settlements, and (2) are not seeking recompense from the distributions already made in Rounds 1 and 2 Settlements despite being members. The argument falls flat.

The Court assesses whether claims are late in terms of compliance with claims deadlines. Here, Members did not file proofs of claim in the Round 1 Settlements. The deadline–March 31, 2016, has long since passed. Likewise, the Round 2 Settlements required proofs of claim to be filed by a deadline long since passed–April 28, 2017. Although the settlement plans allowed class members submitting claims to rely on their proof of claim in future settlements with Defendants, as they were processed

7

automatically, there is nothing in the settlement plans that would allow a proof of claim in a latter round to relate back to an earlier settlement. Therefore, the Court finds Members' claims to reserve funds from Rounds 1 and 2 Settlements are late.

### 2. Equitable Considerations

The parties next argue whether Members should participate in the distribution of reserve funds regardless of timing issues. Members assert that given the method by which settlement rounds were established, the fiduciary duty owed to Members by Class Counsel, and the lack of any resulting prejudice to class members, equities favor allowing Members' participation. Class Counsel argues that the circumstances of this case undermine any argument that Members should participate in the distribution of reserve funds based on equity and fairness.

The Supreme Court held that in deciding whether to accept late claims, courts consider "all relevant circumstances" including the danger of prejudice to other class members, the length of the delay and effect on judicial proceedings, the reason for the delay, and whether the late claimant acted in good faith. Pioneer Inv. Servs. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993).

After considering all of the circumstances and case law relevant to the resolution of Members' position, the Court concludes that there is no justification for the delay and allowing Members to participate in the distribution of the reserve funds from Rounds 1 and 2 would prejudice class members. In In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig., No. 09-3690 (N. D. Ill. 2016), for example, the class counsel supported allowing nine late-filed claims because the claims processing would not be delayed, and the claims were filed within weeks to several months of the deadline. In contrast, DiCarlo, a Senior Project Manager for the Claims Administrator, has represented that the delay

here could last 18 months and would preclude distribution of any money from any settlement until every claim was processed. (DiCarlo Decl. ¶ 24). DiCarlo's detailed description of the process by which the allocation plans were used to calculate the pro rata shares of dealerships that filed claims, and the painstaking process for valuing the claims is uncontested. (DiCarlo Decl., ¶¶ 20, 21). The administrative costs would necessarily increase if Members were allowed to participate. In addition, the delay by Members here was not months, but years.

The late claim allowed in In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 319-20 (3d Cir. 2001), involved a potential member who did not learn of the settlement in time to file the initial registration as required by the claim process, but did file a timely proof of claim. The court allowed the claim, and 100 similar claims, observing that the claims constituted "a minuscule fraction of the total settlement class," that the inclusion was not prejudicial because the administration and distribution were still underway, and the inclusion would neither disrupt nor delay the process. The court further found that the individual showed excusable neglect and good faith because he had not received direct notice. Id. at 328-29. Again, in the case before this Court, Members did not file timely proofs of claim in Rounds 1 and 2, and the evidence demonstrates that Members received multiple copies of the Round 1 and Round 2 Settlement notices via email and hard copy. (ECF No. 593 in 12-102, Class Counsels' Response Brief, DiCarlo Decl. ¶¶ 32-34). Members do not contend otherwise.[2]

---

[2] In fact, the Claims Administrator, KCC, identified at least 96 Round 1 settlement emails sent to employees of the Wolf Automotive Group, including managers, executives, salespeople, and others on September 15, 2015. All were delivered successfully. KCC sent 96 Round 2 Settlement notices on September 9, 2016, but 14 were bounced. KCC then mailed notices to 7 of the 21 listed Wolfe Automotive Group dealers in Rounds 1 and 2. (DiCarlo Decl. ¶ 32). KCC identified emails sent to 8

The late claims filed and allowed by the court in In re Agent Orange Prod. Liab. Litig., 69 F. Supp. 1250, 1263 (E.D. N.Y. 1988), caused no significant administrative costs, and that court found that late claims would be "de minimus" compared to timely claims.  In contrast, here, the number of eligible class members would increase dramatically, by 1500, because just over 3400 Dealership class members submitted claims in Round 1 whereas approximately 5000 submitted claims in Round 3.  The Court does not find the increase de minimis; it could result in an increase of 50%, depending on how the number of claims and dealerships are calculated.  (DiCarlo Decl. ¶ 25).

In addition to the distinctions between the matter at hand and those addressed by the cases cited above, the Court recognizes that the reserves were created to account for potential changes to the allocation based upon new information about parts and models targeted by the conspiracies, not as a back-up to cover late claims.  (See DiCarlo Decl. ¶ 2); See also ECF No. 394-1, pp 5-9 in 12-102).  Class Counsel made clear that "In the event and to the extent that the reserve fund is not needed to cover payments described above, any funds remaining in the reserve fund after future allocations will be paid to eligible dealerships based on their pro rata share of the settlement funds and the eligible claims filed."  Nothing in the reserve fund explanation to the Court suggests that they were created to account for the situation in which Members find themselves.

---

employees of Young Automotive Group LLC regarding Round 1 Settlement, which were delivered successfully.  KCC successfully emailed notice of Round 2 Settlements to 21 employees; eight successfully.  KCC mailed paper notice to 8 dealerships in both Rounds.  The same occurred regarding Kings Nissan and Kings Infiniti, Inc.:  26 emails were successfully delivered in Round 1,  and 3 emails in Round 2.   Paper notices were also sent to both dealerships.  (Id. at ¶ 34).

Nor does the Court find Class Counsel has violated its fiduciary duty to protect all class members' interests by arguing against Members. Members contend that Class Counsel is protecting early filers at Members' expense, arguing that Class Counsel has measured Members' interests against so-called "early filers." Members mischaracterize the status of eligible dealerships in Rounds 1 and 2 Settlements–they are timely filers, not early filers. Moreover, reserve funds were put in escrow years ago with the stated purpose of allowing dealerships with timely proofs of claim to receive an initial advance. Considering the amount of time that has passed between the claims deadlines in Rounds 1 and 2, and distribution of the reserves, as well as the purpose of the reserve funds, the Court rejects Members' position that Class Counsel is not meeting their fiduciary duty to class members. Notably, Class Counsel does not take the position that eligible class members have some justifiable expectation to a particular payout and would be prejudiced on that basis by approval of Members' late claims. Their position turns on factors such as the lack of evidence that Members pursued their claims diligently. Deadlines are necessary for finality, and here ignoring those deadlines would delay distribution 18 months or more and increase administrative costs. DiCarlo has represented to the Court that a distribution of the reserve funds was in the works, likely to occur within a month. The claims already have been reviewed, validated, and tabulated. The equities do not favor Members, who are not unsophisticated consumers and have not even provided an explanation for their delay. They certainly have not established good cause for the position in which they find themselves.

### III.  CONCLUSION

The plan language of the Allocation Plans limited participation in the settlements to those class members that filed timely and valid claims.  The equities here do not favor opening the reserve funds to Members relative to Rounds 1 and 2 Settlements.  Therefore, the Court **DENIES** Members' motion.

**IT IS SO ORDERED**.


Dated: September 30, 2020                                             s/Sean F. Cox
                                                                                          Sean F. Cox
                                                                                          U. S. District Judge